65 P.3d 343 (2003)
116 Wash.App. 67
STATE of Washington, Respondent,
v.
Sigiel SWANSON, Appellant.
No. 28012-4-II.
Court of Appeals of Washington, Division 2.
March 4, 2003.
*344 Karen Mccarty Lundahl, Attorney at Law, Tacoma, WA, for Appellant.
John Christopher Hillman, Pierce County Prosecuting Attorney, Tacoma, WA, for Respondent.
BRIDGEWATER, J.
Sigiel Swanson appeals the trial court's decision denying his petition for restoration of his firearm rights. Swanson contends that the court had no discretion to deny his petition once he demonstrated that he had satisfied the several requirements enumerated at RCW 9.41.040(4)(b)(ii). Because RCW 9.41.040(4) does not expressly grant the restoring court any discretion or state a burden of proof, but does set forth several requirements that must be satisfied before an individual petitions for restoration, we hold that the restoring court serves a ministerial functioni.e., granting the petitiononce the petitioner has satisfied the enumerated requirements. Thus, we reverse the trial court's denial of Swanson's petition.
On February 26, 1999, Swanson was convicted of fourth degree assault and interfering with a report of domestic violence. The incident that led to these convictions occurred on September 9, 1998. Both convictions were designated as domestic violence related crimes and were misdemeanors. Under Washington law, Swanson's fourth degree assault conviction resulted in the loss of his right to lawfully own and possess firearms. RCW 9.41.040(1)(b)(i).[1]
In April 2001, Swanson petitioned the Pierce County Superior Court to have his firearm rights restored. The State filed a response urging that the court deny Swanson's petition because he had not spent three years in the community without reoffending, which made him ineligible to seek relief. Swanson petitioned the court again on September *345 4, 2001. The State filed a response arguing that Swanson had not demonstrated that he was safe to own and possess guns. The court concluded that Swanson was eligible to petition the court for restoration of his rights and that RCW 9.41.040(4) gave the court discretion to grant or deny the petition. The court denied the petition, holding that Swanson presented no evidence to convince the court that his firearm rights should be restored. Swanson moved for reconsideration and the court denied the motion, holding that he was not a safe person in the community with a firearm. Swanson appeals the petition order.
We must decide whether RCW 9.41.040(4) confers discretion on the petitioned court to grant or deny a petitioner's request for firearm rights restoration.
Statutory construction is a question of law that we review de novo. Stuckey v. Dep't of Labor & Indus., 129 Wash.2d 289, 295, 916 P.2d 399 (1996). The fundamental objective of statutory construction is to ascertain and carry out the Legislature's intent. Rozner v. Bellevue, 116 Wash.2d 342, 347, 804 P.2d 24 (1991). If the statute is plain and unambiguous, its meaning must be derived from the statute's words alone. Rozner, 116 Wash.2d at 347, 804 P.2d 24. "A statute is ambiguous if it can reasonably be interpreted in two or more ways, but it is not ambiguous simply because different interpretations are conceivable." Berger v. Sonneland, 144 Wash.2d 91, 105, 26 P.3d 257 (2001). The courts need not discern an ambiguity by imagining a variety of alternative interpretations. Berger, 144 Wash.2d at 105, 26 P.3d 257.
The statute at issue, RCW 9.41.040, is not a model of clarity. While it does specifically set forth several threshold requirements that an individual must meet before petitioning,[2] it does not espouse any procedure to be followed at court respecting parties or time limits; it does not refer to burdens; it does not mention any requirements, other than pre-petition requirements, that a petitioner must prove or satisfy; and, it does not expressly confer or refer to the court's discretion. In short, the statute's plain language is unhelpful due to various omissions. Thus, we must evaluate the several omissions in order to understand the legislative intent with regard to firearm rights restoration.
But first, we pause to consider another argument. The State contends that the legislative findings and intent for the "Hard Time for Armed Crime Act"[3] (the Act) bear on the question of a court's discretion in granting or denying a petition to restore firearm rights. The Legislature expressly intended that the Act deter criminals from possessing deadly weapons when committing crimes and to generally "stigmatize" the possession of such weapons by criminals. Laws of 1995, ch. 129, § 1.[4] The "FINDINGS AND *346 INTENT" section of the Act does not address firearm rights restoration in general or a court's discretion in the rights restoration context in particular. Thus, the Legislature's express findings and intent shed scant light on the issue that we face.
A. Constitutional right
The Washington constitution commands that "[t]he right of the individual citizen to bear arms in defense of himself, or the state, shall not be impaired." CONST. art. I, § 24. In contrast to several other jurisdictions,[5] a Washington citizen's right to bear arms is individual. With this in mind, we turn to various legislative enactments.
B. Other relevant statutes
(1) RCW 9.96.010. This statute confers, upon the state governor, the power to restore the civil rights of an imprisoned individual whose term "is about to expire or has expired, and ... has not otherwise had his civil rights restored." The Legislature expressly made the governor's power discretionary.[6]
(2) RCW 9.96.050. This statute prescribes the procedure for restoring civil rights to parolees who have been finally discharged. It provides:
When a prisoner on parole has performed the obligations of his or her release ... for such time as shall satisfy the indeterminate sentence review board that his or her final release is not incompatible with the best interests of society and the welfare of the paroled individual, the board may make a final order of discharge and issue a certificate of discharge to the prisoner.
Although RCW 9.96.050 specifically excepts gun rights from automatic restoration, it is instructive because it vests the board with great discretion before granting an order of final discharge. But, as in RCW 9.96.010, that discretion is clearly set forth and the burden is plainly upon the parolees.
(3) RCW 9.92.066. This statute, which applies only to felonies committed before July 1, 1984 (see RCW 9.92.900), allows a person to apply for restoration of civil rights upon termination of his "suspended" sentence. The statute expressly makes restoration discretionary with the court.[7] The statute does not affect Swanson's case directly because Swanson committed his crimes after July 1, 1984, the crimes were not felonies, and his sentences were "deferred" rather than "suspended." But, the statute is instructive because it contains a specific and plain grant of discretion.
(4) RCW 9.94A.637. This statute applies to persons on parole for felonies committed before July 1, 1984, and to persons convicted of felonies committed after that date. As Swanson's crimes were misdemeanors, the statute does not apply directly. But, the statute's procedure and phraseology are instructive. It states that, "[w]hen an offender has completed all requirements of the sentence... the sentencing court ... shall discharge *347 the offender and provide the offender with a certificate of discharge." The discharge restores all civil rights lost by operation of law upon conviction, and the certificate of discharge "is not based on a finding of rehabilitation." RCW 9.94A.637(4). The restoration is clearly not in the court's discretion. Rather, restoration is automatic once the offender completes his sentence requirements.
(5) RCW 9.41.047. This statute governs restoration of firearm rights for individuals who have been involuntarily committed. Upon discharge, an individual who has been involuntarily committed "may ... petition a court of record to have his or her right to possess a firearm restored." RCW 9.41.047(3)(a). The statute states specifically that the petitioner must show that he (1) is no longer required to participate in a treatment program, (2) is no longer required to take medication to treat any condition related to the commitment, and (3) "does not present a substantial danger to himself or herself, others, or the public." RCW 9.41.047(3)(b) (emphasis added). The substantial danger requirement, which is similar in proof to the requirement that the trial court imposed on Swanson, is clearly set forth and is plainly a precondition to firearm rights restoration for individuals who have been involuntarily committed.
(6) RCW 9.41.047(1). This statute requires that the court notify a convicted or committed person of the loss of his firearm rights when the conviction or commitment is one that carries such a penalty. It reads,
At the time a person is convicted of an offense making the person ineligible to possess a firearm, or at the time a person is committed by court order under RCW 71.05.320, 71.34.090, or chapter 10.77 RCW for mental health treatment, the convicting or committing court shall notify the person, orally and in writing, that the person must immediately surrender any concealed pistol license and that the person may not possess a firearm unless his or her right to do so is restored by a court of record.

(Emphasis ours).
The convicting or committing court has no discretion to decide which crimes or commitments shall affect a person's firearm rights. This clear lack of discretion in the right removal context is consistent with the lack of discretion in the restoration context.
C. RCW 9.41.040(4) analysis
On its face, RCW 9.41.040(4) gives no discretion to the restoring court once the enumerated, threshold requirements are met. In fact, the only discretion that the statute contemplates belongs to the petitioning individual, and that discretion concerns his decision to petition the court in the first place. The provision states, "the individual may petition a court of record to have his or her right to possess a firearm restored." RCW 9.41.040(4) (emphasis added). This fact militates against a construction of RCW 9.41.040(4) that gives the restoring court any discretion to grant or deny the petition on grounds other than non-compliance with the enumerated, threshold requirements.
In its construction, RCW 9.41.040(4) is more similar to RCW 9.94A.637 than the other statutes discussed above. As with RCW 9.94A.637, RCW 9.41.040(4) limits the restoring body's role to ensuring that the petitioner has satisfied certain prerequisites, i.e. the enumerated, threshold requirements set forth at RCW 9.41.040(4)(b)(ii). The State does not dispute whether Swanson has met those requirements. This similarity also militates against finding that the restoring court had discretion to deny Swanson's petition once the threshold requirements were met.
Expressio unius est exclusio alterius, a common maxim of statutory construction, also aids our decision. The maxim holds that, "[w]here a statute specifically designates the things or classes of things upon which it operates, an inference arises in law that all things or classes of things omitted from it were intentionally omitted by the legislature." Wash. Natural Gas Co. v. Pub. Util. Dist. No. 1, 77 Wash.2d 94, 98, 459 P.2d 633 (1969).
RCW 9.41.040(4)(b)(ii) specifically designates the requirements that an individual must meet before petitioning under RCW *348 9.41.040(4). For a non-felony offense, those requirements are (1) three or more consecutive years in the community without being convicted or currently charged with a felony, misdemeanor, or gross misdemeanor, (2) no prior felony convictions prohibiting firearm possession, and (3) that the individual complete all sentence conditions. RCW 9.41.040(4)(b)(ii). The requirement that a petitioner prove that he is safe to own and possess guns is absent from the statute. Expressio unius est exclusio alterius demands that this court give weight and significance to this obvious legislative vacancy.
A reading of RCW 9.41.047, which governs restoration of firearm rights for individuals who have been involuntarily committed and was discussed above, confirms the above expressio unius est exclusio alterius analysis and generally supports our construction of RCW 9.41.040(4). RCW 9.41.047(3)(b) states specifically that the petitioner must show that he (1) is no longer required to participate in a treatment program, (2) is no longer required to take medication to treat any condition related to the commitment, and (3) does not present a substantial danger to himself or herself, others, or the public. The third requirement imposes essentially the same requirement that the court imposed on Swanson, but the requirement is expressed in the statute. Because the requirement is express in the statute, expressio unius est exclusio alterius would not bar the "substantial danger" requirement of RCW 9.41.047(3)(b) as it does the similar requirement under RCW 9.41.040. The inverse must also be true: that no "substantial danger" type requirement exists under RCW 9.41.040(4) because the statute does not expressly include it. Additionally, that the "substantial danger" requirement is express in RCW 9.41.047(3)(b) demonstrates that the absence of a similar requirement in RCW 9.41.040(4) is not due to legislative oversight. The absence must be given meaning and effect.
Expressio unius est exclusio alterius commands that RCW 9.41.040(4) imposes no burden beyond the three enumerated, threshold requirements set forth at RCW 9.41.040(4)(b)(ii). The maxim also refutes the State's argument that the restoring court is free to impose conditions that were not imposed at the petitioner's sentencing. Several of the statutes discussed above illustrate that the Legislature has considered and imposed conditions other than sentencing conditions; but, in those statutes, the extra conditions are express. The sole mention of "conditions" at RCW 9.41.040(4)(b)(ii) concerns "conditions of the sentence." RCW 9.41.040(4)(b)(ii). Thus, expressio unius est exclusio alterius commands that no other conditions are required.
Further, we note that while the Sentencing Reform Act of 1981[8] limits the sentencing court to imposing "crime-related" conditions for community supervision under RCW 9.94A.030(7), the rule for misdemeanors differs:
Probation outside the SRA is not a matter of right but a matter of grace, privilege, or clemency `granted to the deserving, and withheld from the undeserving, as sound official discretion may dictate.' See State v. Farmer, 39 Wash.2d 675, 679, 237 P.2d 734 (1951). In this older version of probation, which remains applicable to misdemeanants, a court may impose probationary conditions that bear a reasonable relation to the defendant's duty to make restitution or that tend to prevent the future commission of crimes. State v. Summers, 60 Wash.2d 702, 707, 375 P.2d 143 (1962).
State v. Williams, 97 Wash.App. 257, 263, 983 P.2d 687 (1999), review denied, 140 Wash.2d 1006, 999 P.2d 1261 (2000) (emphasis added).
The State attempts to turn a court's power to impose probationary conditions on misdemeanants into a power to impose post-sentence conditions on an individual seeking restoration of a constitutional right. And, as a necessary result of legislative silence as to standards or guidelines, the contemplated power would be standardless. When a court imposes probationary conditions, the conditions are usually based on a presentence investigation. In contrast, there is no *349 provision in RCW 9.41.040(4) for an investigation or other, similar process by which appropriate conditions can be determined. Hence, were we to allow such extra-statutory conditions, the conditions would not be known in advance by the petitioner nor based on any newly acquired, investigative material. Without a legislative declaration that this is the intended result, we cannot sanction such an unfettered grant of authority.
Finally, we are not persuaded that the Legislature intended to expose the State to liability by requiring courts that restore firearm rights to determine whether the petitioner is, essentially, rehabilitated or safe to be at large, which determination might be construed as a warranty against further violence.
Because RCW 9.41.040(4) imposes no requirements other than the enumerated, pre-petition requirements noted above, Swanson had no burden to show that he is safe to own and possess guns. If the Legislature desired to impose that burden, it certainly knew the language to employ, as evidenced by the other statutes discussed above that impose such a burden. By the Legislative omissions in the statute, we hold that RCW 9.41.040(4) imposes only a ministerial duty[9] on the court when the enumerated, threshold requirements are met. Therefore, the trial court erred when it declined to restore Swanson's firearm rights.
Reversed.
I concur: ARMSTRONG, J.
HOUGHTON, P.J., dissenting.
The majority holds that a trial court does not have discretion under RCW 9.41.040 to grant or deny a petition for restoration of a person's right to lawfully own or possess a firearm once a petitioner has satisfied the threshold requirements enumerated in RCW 9.41.040. I respectfully dissent for four reasons.
First, the very fact that RCW 9.41.040 uses the words "may petition," indicates that the Legislature intended to give the trial court discretion to grant or deny firearms petitions. (emphasis added). The word "petition" is used as a verb and is not defined in RCW 9.41.040. When a statute does not define a word, we may rely on its ordinary meaning as defined in a dictionary. Budget Rent A Car Corp. v. Dep't of Licensing, 144 Wash.2d 889, 899, 31 P.3d 1174 (2001).
According to Webster's, the verb "petition" is defined as "to make a request to" or "to make a request for." Webster's Third New International Dictionary 1690 (1969). The logical inference drawn from the Legislature's requiring individuals to request a restoration of their rights is that trial courts may grant or deny those rights. Had the Legislature intended that trial courts serve a purely ministerial function and automatically restore petitioners' rights upon receipt of a petition, the statute would read, "The court shall restore the right to possess a firearm." Instead, RCW 9.41.040 merely grants petitioners who have met the threshold statutory requirements the right to request a restoration of their rights from a trial court. Once an individual has exercised his or her right to petition, RCW 9.41.040 leaves the decision to grant or deny the petition to the sound discretion of the trial court.
Second, although RCW 9.41.040 does not prescribe specific criteria for courts to follow in granting or denying firearms petitions in the same manner as RCW 9.41.047(3)(a), it does not confer unfettered discretion to trial courts as the majority suggests. RCW 9.41.040(4) was enacted as part of the 1995 Hard Time for Armed Crime Act. Laws of 1995, ch. 129, § 16. The intent of this act is twofold: to deter criminals from possessing deadly weapons during the commission of crimes and to "stigmatize" the possession of firearms by criminals. Laws of 1995, ch. 129, § 1. Thus, trial courts must review firearms petitions with the purpose of deterring criminals from possessing firearms during the commission of crimes and creating a stigma about the possession of firearms by criminals. Here, in accordance with this mandate, the trial court reviewed the police report from the night Sigiel Swanson assaulted his *350 ex-wife, stating that he had threatened his ex-wife with a gun and that she was afraid for her safety because he constantly carries a gun, and determined that he was an unsafe person to be in the community with firearms.
Third, because Swanson was convicted of a domestic violence related crime, the Domestic Violence Prevention Act also guided the trial court in determining whether to grant or deny Swanson's petition. Laws of 1991, ch. 301, § 1. In accordance with this act, courts must carry out the intent of the Legislature to prevent future acts of domestic violence. Laws of 1991, ch. 301, § 1. Because Swanson threatened his ex-wife with a gun, it was reasonable for the trial court to deny his petition in order to prevent future acts of violence by him.
Finally, the majority correctly states that expressio unius est exclusio alterius commands that RCW 9.41.040 imposes no burden beyond the three enumerated threshold requirements set forth at RCW 9.41.040(4)(b)(ii). But these requirements are merely the threshold requirements that enable an individual to petition for his or her right to own or possess firearms. As such, expressio unius only restricts courts from imposing additional threshold requirements. The doctrine does not apply once an individual has petitioned a court. Accordingly, I would affirm the trial court's denial of Swanson's petition.
NOTES
[1] RCW 9.41.040(1)(b)(i) states,

A person, whether an adult or juvenile, is guilty of the crime of unlawful possession of a firearm in the second degree, if the person does not qualify under (a) of this subsection for the crime of unlawful possession of a firearm in the first degree and the person owns, has in his or her possession, or has in his or her control any firearm:
(i) After having previously been convicted in this state or elsewhere of any felony not specifically listed as prohibiting firearm possession under (a) of this subsection, or any of the following crimes when committed by one family or household member against another, committed on or after July 1, 1993: Assault in the fourth degree, coercion, stalking, reckless endangerment, criminal trespass in the first degree, or violation of the provisions of a protection order or no-contact order restraining the person or excluding the person from a residence.
[2] RCW 9.41.040(4)(b)(ii) states, in pertinent part,

Notwithstanding any other provisions of this section, if a person is prohibited from possession of a firearm under subsection (1) of this section and has not previously been convicted of a sex offense prohibiting firearm ownership under subsection (1) of this section and/or any felony defined under any law as a class A felony or with a maximum sentence of at least twenty years, or both, the individual may petition a court of record to have his or her right to possess a firearm restored:
. . . .
(b)(ii) If the conviction was for a non-felony offense, after three or more consecutive years in the community without being convicted or currently charged with any felony, gross misdemeanor, or misdemeanor crimes, if the individual has no prior felony convictions that prohibit the possession of a firearm counted as part of the offender score under RCW 9.94A.525 and the individual has completed all conditions of the sentence.
[3] RCW 9.41.040(4)(b)(ii) was enacted as part of the "Hard Time for Armed Crime Act." Laws of 1995, ch. 129, § 16. The current version of RCW 9.41.040(4)(b)(ii) was enacted in 1996. Laws of 1996, ch. 295, § 2.
[4] Laws of 1995, ch. 129, § 1 states:

FINDINGS AND INTENT. (1) The people of the state of Washington find and declare that:
(a) Armed criminals pose an increasing and major threat to public safety and can turn any crime into serious injury or death.
(b) Criminals carry deadly weapons for several key reasons including: Forcing the victim to comply with their demands; injuring or killing anyone who tries to stop the criminal acts; and aiding the criminal in escaping.
(c) Current law does not sufficiently stigmatize the carrying and use of deadly weapons by criminals, and far too often there are no deadly weapon enhancements provided for many felonies, including murder, arson, manslaughter, and child molestation and many other sex offenses including child luring.
(d) Current law also fails to distinguish between gun-carrying criminals and criminals carrying knives or clubs.
(2) By increasing the penalties for carrying and using deadly weapons by criminals and closing loopholes involving armed criminals, the people intend to:
(a) Stigmatize the carrying and use of any deadly weapons for all felonies with proper deadly weapon enhancements.
(b) Reduce the number of armed offenders by making the carrying and use of the deadly weapon not worth the sentence received upon conviction.
(c) Distinguish between the gun predators and criminals carrying other deadly weapons and provide greatly increased penalties for gun predators and for those offenders committing crimes to acquire firearms.
[5] See, e.g., City of Salina v. Blaksley, 72 Kan. 230, 83 P. 619, 620 (1905) (a provision guaranteeing the right of the people "to bear arms for their defense and security" grants the right to bear arms to the people collectively); Commonwealth v. Davis, 369 Mass. 886, 343 N.E.2d 847, 848-49 (1976) (a provision guaranteeing the people's right to bear arms "for the common defense" grants the right to "the aggregate of citizens").
[6] "[T]he governor shall have the power, in his discretion, to restore to such person his civil rights in the manner as in this chapter provided." RCW 9.96.010.
[7] "Thereupon the court may in its discretion enter an order directing that such defendant shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted." RCW 9.92.066.
[8] Swanson was not sentenced under the Sentencing Reform Act.
[9] "Where the law prescribes and defines an official's duty with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the performance of that duty is a ministerial act." City of Bothell v. Gutschmidt, 78 Wash.App. 654, 662, 898 P.2d 864 (1995).