[No. 60552-6-I.   Division One.   October 20, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. RYAN PATRICK HUNTER, *Appellant*.

*Neil M. Fox* and *Liza E. Burke* (of *Cohen & Iaria*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Dennis J. McCurdy, Deputy*, for respondent.

¶1 DWYER, A.C.J. — Ryan Hunter was prohibited from possessing firearms after, as a juvenile, he pleaded guilty to having repeated forced sexual contact with his two younger sisters. Now an adult, Hunter appeals from the superior court's denial of his petition to restore his right to possess firearms. Hunter contends both that the trial court was required to grant his petition and that, if it was not, the statute mandating this result is unconstitutional. However, because Hunter is both a class A felon and a sex offender, the trial court had no authority to grant his petition. The statute imposing this prohibition is constitutional. Accordingly, we affirm.

I

¶2 At age 13, Hunter pleaded guilty to raping his two younger sisters. The juvenile department of the King County Superior Court entered an order of disposition on the charge, finding Hunter guilty of one count of rape of a child in the first degree, and sentencing him to a special sexual offender disposition alternative. Because rape of a child in the first degree is a class A felony sex offense, the court's disposition required that Hunter register as a sex offender. The disposition also included a suspended term of commitment, 12 months of community supervision, sexual deviance counseling and treatment, and various conditions.

¶3 The terms of the disposition rendered Hunter ineligible to possess any kind of weapon during his course of

treatment. Moreover, because rape of a child in the first degree is a class A felony, a "serious offense" as defined by RCW 9.41.010(12), the disposition also included a notification stating:

> Pursuant to RCW 9.41.047, RCW 9.41.040, and RCW 9.41.010, you are ineligible to possess a firearm unless your right to do so is restored by a court of record.

¶4 During the disposition hearing, Hunter's parents voiced concern about the weapons and firearm prohibitions, informing the court that their family had a long tradition of hunting, and inquiring whether Hunter would be able to use a bow and arrow to participate in that activity. The court informed Hunter's parents that, during treatment, Hunter would be "under a prohibition of no weapons whatsoever, and a bow and arrow or an archery set is definitely within the contemplation of the statute." With respect to archery, the court went on: "As long as he's successful [with treatment], there can be an exception made after he's done and the case is, you know, dismissed, we hope." Reaching the issue of firearms, the court continued:

> As far as the firearms, that's going to have to wait a little longer. So two years wait, hopefully everything will go well, then the archery can come into play. But the firearms will even take longer to reinstate. You had a question.
>
> RYAN HUNTER: Yes, uhm, so as long—so, after I complete my treatment, I would be able to restore those rights?
>
> THE COURT: Yeah. But there's a two-step process. Your dad's talking about archery.
>
> RYAN HUNTER: Yeah.
>
> THE COURT: I don't have any problems with that as long as the program is completed and you've been successful.
>
> Then the bigger issue, and this is going to be until some years down the line, the right to bear arms, firearms, that's your next step.
>
> RYAN HUNTER: Yeah. So firearms will be the last.
>
> THE COURT: The last thing, right.
>
> RYAN HUNTER: Okay.

¶5 Hunter successfully completed his treatment program and, approximately six and a half years later, filed a petition in superior court seeking termination of the requirement that he register as a sex offender, which the court granted.

¶6 Hunter also petitioned the superior court to restore his right to possess firearms. Hunter argued that, because he had fulfilled all of the conditions listed in RCW 9.41.040(4), restoration of his firearm rights was mandatory. The State opposed the restoration of Hunter's firearm rights, initially conceding that Hunter had "technically met the requirements of RCW 9.41.040(4)(b)(i)" but contending that the court should nonetheless decline to restore Hunter's right to bear arms due to the fact that Hunter had committed five traffic infractions since obtaining his driver's license.

¶7 The court accepted this argument, ruling that Hunter was "not an appropriate candidate for restoration of firearms at this time due to numerous traffic infractions" and denied his petition.

¶8 Hunter moved for reconsideration. In response, the State changed its original position, stating that it

> now recognizes that it incorrectly argued [in response to Hunter's original petition] that the respondent was statutorily eligible to have his firearm rights restored. He is not. Because the underlying offense for which the respondent's firearms rights were terminated was a Class A sex offense, he is forever precluded from having his firearm rights restored. Consequently, the question regarding this court's discretion is moot and the court should deny the respondent's motion.

¶9 The court denied Hunter's motion for reconsideration.

## II

¶10 Ascertaining the meaning of the provisions of RCW 9.41.040 "presents an issue of statutory interpretation. This court's review is therefore de novo." *Nakatani v.*

*State*, 109 Wn. App. 622, 625, 36 P.3d 1116 (2001). Likewise, the "constitutionality of a statute is a question of law which is reviewed de novo." *State v. Shultz*, 138 Wn.2d 638, 643, 980 P.2d 1265 (1999).

## III

¶11 Hunter first contends that the trial court erred by failing to grant his petition to have his firearm rights restored because (1) the trial court erroneously based its decision on discretionary, nonstatutory factors and (2) pursuant to our decision in *State v. Swanson*, 116 Wn. App. 67, 65 P.3d 343 (2003), restoration of firearm rights is a ministerial, nondiscretionary function of the courts if all of the requirements for firearm restoration set forth in RCW 9.41.040(4) have been met by the petitioner. While Hunter correctly states the holding in *Swanson*, his argument ignores the settled law in Washington.

¶12 RCW 9.41.040(4) expressly disallows the restoration of firearm rights to persons convicted of either sex offenses or class A felonies:

Notwithstanding any other provisions of this section, if a person is prohibited from possession of a firearm under subsection (1) or (2) of this section and has not previously been convicted . . . of a sex offense prohibiting firearm ownership under subsection (1) or (2) of this section and/or any felony defined under any law as a class A felony or with a maximum sentence of at least twenty years, or both, the individual may petition a court of record to have his or her right to possess a firearm restored:

. . . .

(b)(i) If the conviction . . . was for a felony offense, after five or more consecutive years in the community without being convicted or found not guilty by reason of insanity or currently charged with any felony, gross misdemeanor, or misdemeanor crimes, if the individual has no prior felony convictions that prohibit the possession of a firearm counted as part of the offender score under RCW 9.94A.525.

RCW 9.41.040(4). Thus, a person who has been precluded from possessing a firearm pursuant to RCW 9.41.040 may petition the court for restoration of firearm rights after five crime-free years in the community and "if the individual has no prior felony convictions that prohibit the possession of a firearm counted as part of the offender score under RCW 9.94A.525." RCW 9.41.040(4)(b)(i). The petition may be granted, however, only if the petitioner "has not previously been convicted . . . of a sex offense prohibiting firearm ownership . . . and/or any felony defined under any law as a class A felony." RCW 9.41.040(4).

¶13 Hunter contends that, contrary to this reading of the statute, the phrases "previously been convicted" and "no prior felony convictions" refer to convictions entered *before* the conviction for which the petitioner's firearm rights were ultimately revoked.[1] Thus, according to Hunter, because he was convicted only of the offense for which his firearm rights were revoked, restoration of his firearm rights is mandatory. He bases this contention on language in *Swanson*, in which we stated that the restoring court serves only "a ministerial function—i.e., granting the petition—once the petitioner has satisfied the enumerated requirements." *Swanson*, 116 Wn. App. at 69.

¶14 Hunter correctly states our holding in *Swanson*, in which we concluded that "the only discretion that the statute contemplates belongs to the petitioning individual, and that discretion concerns his decision to petition the court in the first place." *Swanson*, 116 Wn. App. at 75. Accordingly, RCW 9.41.040(4) gives the petitioned court no "discretion to grant or deny the petition on grounds other than noncompliance with the enumerated threshold requirements." *Swanson*, 116 Wn. App. at 75. As such, Hunter correctly notes that the superior court erred by denying his

---

[1] The State contends that Hunter is barred from making this argument by the fact that he did not appeal the firearm restriction imposed as part of his original juvenile disposition. This argument is specious. Hunter is challenging the denial of his petition to have his firearm rights restored, not the original imposition of the firearm restriction.

petition based on his accumulation of traffic infractions. Thus, Hunter is entitled to appellate relief if his petition established that his request met the enumerated requirements of RCW 9.41.040.

¶15 However, Hunter has not met those requirements. Indeed, Hunter is not eligible for restoration of his firearm rights pursuant to RCW 9.41.040(4). We have, in numerous cases, specifically rejected the contention advanced by Hunter—i.e., that his firearm rights may be restored pursuant to RCW 9.41.040(4) as long as he was not "convicted . . . of a sex offense prohibiting firearm [or a] class A felony" *before* being convicted of the offense for which his firearm rights were revoked.

¶16 Those cases conclude that the phrase "previously been convicted" refers to convictions entered before the *petition* for firearm restoration is filed and does *not* refer solely to convictions entered before the conviction for which the petitioner's firearm rights were revoked. A convicted child rapist made an argument identical to Hunter's in *Graham v. State*, 116 Wn. App. 185, 64 P.3d 684 (2003). In rejecting the argument, we held that "the statutory language, coupled with the legislature's express intent, leads us to conclude that the reference to 'previous convictions' in the second sentence of RCW 9.41.040(4) means any conviction prior to the time of the petition, not a conviction prior to the one that disabled the petitioner's firearm rights." *Graham*, 116 Wn. App. at 190. This is the uniform interpretation of the statute. *See, e.g., In re Firearm Possession Rights of Rivard*, 146 Wn. App. 891, 894, 193 P.3d 195 (2008) ("And he is not entitled to have his right restored because he has been convicted of a crime which is classified as a class A felony."); *Smith v. State*, 118 Wn. App. 464, 470, 76 P.3d 769 (2003) ("Because Mr. Smith was convicted of a sex offense, he cannot have his firearm rights restored. RCW 9.41.040(4)."); *Nakatani*, 109 Wn. App. at 627 ("RCW 9.41.040(4) . . . did not authorize the court to reinstate firearm possession rights for anyone convicted of a crime with a maximum sentence of 20 years or longer."); *see also*

13B SETH A. FINE & DOUGLAS J. ENDE, WASHINGTON PRACTICE: CRIMINAL LAW § 2810, at 110 (2d ed. Supp. 2007) ("A person who has been convicted of a sex offense or a class A felony can never have his or her firearm rights restored by a court.").

¶17 Hunter contends that these prior decisions "should not be followed" but points to neither an intervening change in the law nor any other plausible basis for this contention. We decline Hunter's invitation to overrule the established interpretation of RCW 9.41.040(4). Because Hunter was convicted of a class A felony sex offense, he is ineligible to have his firearm rights restored pursuant to RCW 9.41.040(4).

IV

¶18 Hunter next contends that the superior court had no authority to deny his petition because its previous "rulings" prospectively guaranteed the restoration of his firearm rights, notwithstanding the legislature's enactment of RCW 9.41.040(4). Hunter premises this contention on (1) the juvenile court judge's statements at the disposition hearing indicating that Hunter could later have his firearm rights restored and (2) the phrasing of the mandatory firearm restriction notification set forth in Hunter's written juvenile disposition order. Hunter's argument is meritless.

¶19 Contrary to Hunter's characterization, the standard-form firearm notification was not a "ruling" by the juvenile court judge. The warning is expressly entitled, both in its caption and in its footer, *"NOTIFICATION OF INELIGIBILITY TO POSSESS FIREARMS."* (Emphasis added.) The notification did not purport to independently affect Hunter's right to possess a firearm. Further, nothing in the notification purported to guarantee that Hunter's firearm rights would, at some point subsequent to the entry of the juvenile court disposition, be restored to him. The notification is explicitly conditional, stating that Hunter was barred from firearm possession "unless" his firearm

rights were restored by a court of record. Nothing in this statement can be read as a guaranty that a court of record *would* restore Hunter's rights, or even that a court of record would necessarily have the authority to do so.

¶20 The juvenile court judge's mistaken musings during the disposition hearing, in contrast, do evidence a belief on the part of the court that Hunter could, at some point, be eligible for restoration of his firearm rights. But the court's utterances were not rulings. Indeed, they were unrelated to any petition—or other request for relief—from Hunter. Not all words uttered by judges in courtrooms constitute rulings. Hunter's argument to the contrary is unavailing.[2]

V

¶21 Hunter next contends that, notwithstanding both his ineligibility for firearm restoration pursuant to RCW 9.41.040(4) and the trial court's ruling on his petition, the trial court's order granting him relief from continued sex offender registration effectively constituted a "certificate of rehabilitation" under RCW 9.41.040(3), and that, accordingly, as a matter of law, the court authorized restoration of Hunter's firearm rights in spite of its express denial of his request that it do so. We disagree.

¶22 RCW 9.41.040(3) provides:

A person shall not be precluded from possession of a firearm if the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted or the conviction or disposition has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence.

---

[2] Hunter's characterization of the State's opposition to his petition as an attempt to obtain "post-conviction relief" is as misguided as the State's belief that Hunter's petition is barred by Hunter's failure to appeal his juvenile disposition. Again, the ruling now at issue is the denial of Hunter's petition, not the conviction and resulting juvenile disposition that caused Hunter's right to possess firearms to be restricted.

¶23 According to Hunter, the reference to a "certificate of rehabilitation" or "equivalent procedure" in this statute requires us to conclude that, when the trial court entered the order relieving Hunter of his duty to register as a sex offender, as a matter of law, it necessarily also made an implicit "finding of rehabilitation" such that, notwithstanding its denial of Hunter's petition, it inadvertently restored Hunter's firearm rights.

¶24 This is wrong for several reasons. First, contrary to Hunter's contention, there is no recognized procedure by which Washington courts may issue a certificate of rehabilitation—we have held that the "certificate of rehabilitation" language in RCW 9.41.040(3) applies only to acknowledged procedures in other states whereby courts may find an offender to be rehabilitated. *State v. Masangkay*, 121 Wn. App. 904, 908-09, 91 P.3d 140 (2004). Washington has no such acknowledged procedure. Accordingly, "RCW 9.41.040(3), which contains the 'certificate of rehabilitation' language . . . cannot be reasonably interpreted as authorization for Washington courts to issue certificates of rehabilitation." *Masangkay*, 121 Wn. App. at 906. "[T]he creation of a certificate of rehabilitation procedure is a matter for the legislature to perform—not the courts." *Masangkay*, 121 Wn. App. at 913. Hunter does not contend that any such legislatively-created procedure exists. Moreover, although Hunter contends that *Masangkay* was wrongly decided, he does not point to either new developments in the law or to any legal issue left unexamined in *Masangkay* in support of that contention.

¶25 Second, regardless of *Masangkay*'s continuing viability, we have expressly rejected the argument that a trial court ruling, only tangentially (if at all) related to a finding of rehabilitation, constitutes the "equivalent procedure" necessary to satisfy the requirements of the statute. "The statute requires that such 'equivalent procedure' must be based on a 'finding' of either innocence or rehabilitation." *Nakatani*, 109 Wn. App. at 625-26 (citing *State v. Radan*, 143 Wn.2d 323, 330, 21 P.3d 255 (2001)). No such finding

was made here.[3] Rather, the trial court's finding was simply that requiring Hunter to register as a sex offender no longer served the purposes of the sex offender registration statute—not that Hunter was "rehabilitated" for purposes of firearm ownership.

¶26 Finally, even if there were both a colorable argument that relief from sex offender registration constituted a finding of rehabilitation *and* a colorable argument that such a judicial finding might serve to restore firearm rights pursuant to RCW 9.41.040(3),[4] in this case the trial court *expressly declined* to find that restoration of Hunter's firearm rights was justified by the facts pertinent to Hunter's application. Furthermore, while restoration of firearm rights is a ministerial judicial function when the requirements of RCW 9.41.040(4) are met, the use of the term "finding" in RCW 9.41.040(3) implies that, if a judicial certificate of rehabilitation procedure actually existed, it would be discretionary in nature. Here, the superior court considered restoring, and declined to restore, Hunter's firearm rights based on its incorrect belief that it had the discretion to do so. It did this *simultaneously* with considering Hunter's request for relief from sex offender registration. It strains credulity to suppose that, under these circumstances, the superior court's ruling actually constituted a discretionary finding that Hunter was rehabilitated within the meaning of RCW 9.41.040(3).

## VI

¶27 Hunter's final contention is that, if RCW 9.41.040(4) renders him ineligible to possess firearms based on his

---

[3] Hunter contends that the trial court's action in relieving him of the requirement that he register as a sex offender is indistinguishable from the Montana procedure found to be an "equivalent procedure" of a certificate of rehabilitation in *Radan*, 143 Wn.2d 323. This assertion is factually and legally inaccurate. First, Radan was not a sex offender, and the supervision from which he was relieved was not sex offender registration. *Radan*, 143 Wn.2d at 326. Second, *all* of Radan's civil rights—specifically including the right to own firearms—were restored under the Montana early discharge procedure. *Radan*, 143 Wn.2d at 326.

[4] To repeat, there is neither.

juvenile conviction, that statute violates the Second Amendment to the United States Constitution and article I, section 24 of the Washington State Constitution.[5] This argument is without merit.

██ ¶28 Permanent restrictions on felons' rights to possess firearms constitute acceptable regulation of the right to bear arms under both the federal and state constitutions. *United States v. Emerson*, 270 F.3d 203, 261 (5th Cir. 2001) ("it is clear that felons, infants and those of unsound mind may be prohibited from possessing firearms") (applying individual rights theory of the Second Amendment); *State v. Krzeszowski*, 106 Wn. App. 638, 641, 24 P.3d 485 (2001). According to Hunter, the recent United States Supreme Court decision *District of Columbia v. Heller*, 554 U.S. ___, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008) (plurality opinion), changed this. The opposite is true. "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Heller*, 128 S. Ct. at 2816-17.

¶29 According to Hunter, notwithstanding this clear statement in *Heller*, that case's Second Amendment *analysis* mandates reexamination and abandonment of the longstanding recognition that the prohibition on the possession of firearms by felons (specifically, persons convicted of felonies as juveniles) does not violate the Second Amendment.[6] We disagree.

---

[5] The State's contention that Hunter is barred from raising the constitutionality of RCW 9.41.040 on appeal is, like its contention that Hunter may not challenge the trial court's denial of his petition, based on its erroneous belief that Hunter is collaterally attacking his original juvenile disposition. As such, it is equally baseless. "[A] claim of error may be raised for the first time on appeal if it is a 'manifest error affecting a constitutional right.' " *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995) (quoting RAP 2.5(a)(3)).

[6] *Heller* does not, and cannot, purport to affect whether RCW 9.41.040(4) violates article I, section 24 of the Washington State Constitution. Because Hunter does not contend that the right to bear arms described in our state constitution operates differently with respect to his case than does the Second Amendment, we decline to consider that argument. *See State v. Brown*, 132 Wn.2d 529, 594-95, 940 P.2d 546 (1997) ("This Court will address a state constitutional claim only if the claimant sufficiently briefs the *Gunwall* factors." (citing *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986))). In any event, we have specifically

¶30 Hunter's argument assumes that *Heller* overruled the significant body of case law holding that the Second Amendment does not apply to the states. *E.g., Miller v. Texas*, 153 U.S. 535, 538, 14 S. Ct. 874, 38 L. Ed. 812 (1894); *Presser v. Illinois*, 116 U.S. 252, 265, 6 S. Ct. 580, 29 L. Ed. 615 (1886); *Quilici v. Vill. of Morton Grove*, 695 F.2d 261, 270-71 (7th Cir. 1982). But *Heller* addressed the firearms regulations of a federal territory, the District of Columbia. Indeed, the incorporation of the Second Amendment into the Fourteenth Amendment, and thus the Second Amendment's applicability to the states was, in fact, a question expressly left unaddressed in *Heller. Heller*, 128 S. Ct. at 2813 n.23.

¶31 Even were we to assume, though, that—notwithstanding its statement to the contrary—the Court in *Heller* impliedly overruled its own precedents concerning the incorporation of the Second Amendment, Hunter's contentions concerning the applicability of the *Heller* majority's rationale to his case are baseless. It is true that, pursuant to *Heller*, a restriction on the right to bear arms must meet a stricter standard of judicial review than "rational-basis scrutiny," (although exactly what standard must be met remains unclear). *Heller*, 128 S. Ct. at 2818 n.27. However, the law here at issue withstands review even under the hypothetical Second Amendment "strict scrutiny" standard that Justice Breyer criticizes in his dissent in *Heller*—i.e., the law being " 'narrowly tailored to achieve a compelling governmental interest.' " *Heller*, 128 S. Ct. at 2851-52 (Breyer, J., dissenting) (quoting *Abrams v. Johnson*, 521 U.S. 74, 82, 117 S. Ct. 1925, 138 L. Ed. 2d 285 (1997)). That is, RCW 9.41.040 is narrowly tailored to achieving its goals—among other things, addressing the "increasing and major threat to public safety" posed by "[a]rmed criminals," Laws of 1995, ch. 129, § 1, because it imposes permanent firearm restrictions only on that class

rejected the argument that those cases noting the textual differences between the state and federal constitutional provisions require different approaches to felon firearm prohibitions. *Krzeszowski*, 106 Wn. App. at 641 n.1 (distinguishing *State v. Rupe*, 101 Wn.2d 664, 683 P.2d 571 (1984)).

of criminals that the legislature has deemed to be the most dangerous: sex offenders, offenders who have committed class A felonies, and felons whose crimes subject them to over 20 years' imprisonment. Thus, the statutory scheme addresses a legitimate governmental interest (protecting the public by precluding felons from possessing firearms) and is narrowly tailored (the lifetime ban applies only to the most dangerous of those felons, as defined by the legislature). This meets the "strict scrutiny" test.

¶32 Hunter finally contends that we should draw a special distinction with respect to the constitutionality of RCW 9.41.040 as it applies to persons disabled as a result of juvenile felony convictions. However, " '[a] statute is presumed to be constitutional, and the party challenging its constitutionality bears the burden of proving its unconstitutionality beyond a reasonable doubt.' " *State v. Abrams*, 163 Wn.2d 277, 282, 178 P.3d 1021 (2008) (quoting *State v. Thorne*, 129 Wn.2d 736, 769-70, 921 P.2d 514 (1996)). Here, none of the cases to which Hunter cites support his contention that those persons convicted as juveniles of felony offenses enjoy greater protections under the Second Amendment than do persons convicted as adults.[7] In contrast, the State cites a multiplicity of state codes which prohibit firearm possession by persons convicted of felonies as juveniles. *E.g.*, KY. REV. STAT. ANN. § 527.040(3); OHIO REV. CODE ANN. § 2923.13(A)(2); CONN. GEN. STAT. ANN. § 53a-

---

[7] Hunter primarily relies upon *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), in support of this argument. But whether a state may *execute* a juvenile felon (the issue in *Roper*) and whether a state may restrict a juvenile felon's right to bear arms are not identical questions, and they require different analyses. One question (that of the constitutionality of the death penalty for juvenile felons) deals with the propriety of a *punishment* imposed on the juvenile offender. The other (the constitutionality of lifetime firearm restrictions imposed on juvenile felons) deals with the proper scope of a regulation with the express purpose of protecting the public.

Thus, the competing governmental interests at stake are not qualitatively similar and, as such, when balanced against the likewise divergent rights of the offenders at issue (the right to exist versus the right to be armed), lead to different scopes of constitutional protection. Here, Hunter's right to bear arms does not override the legislature's reasoned decision that certain armed felons pose an unacceptable danger to the public. The fact that Hunter was convicted as a juvenile does nothing to undermine this conclusion.

-217(a). There is nothing whatsoever in *Heller* indicating that it rendered any or all of these laws constitutionally invalid. Hunter has failed to demonstrate that RCW 9.41.040(4) is unconstitutional.

¶33 Affirmed.

ELLINGTON and APPELWICK, JJ., concur.